IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02362-WYD-MEH

MALIBU MEDIA, LLC,

      Plaintiff,

v.

JAMES BOOTH,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court are Plaintiff's Motion to Strike Defendant's Affirmative Defenses [filed March 17, 2014; docket #40] and Plaintiff's Motion to Dismiss Defendant's Counterclaim for Declaratory Relief [filed March 17, 2014; docket #41]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motions are referred to this Court for recommendation. (Dockets ## 42, 44.) The motions are fully briefed, and the Court determines that oral argument would not materially assist in its adjudication of these matters. For the reasons that follow, the Court RECOMMENDS Plaintiff's motion to dismiss be **granted** and its motion to strike be **granted in part and denied in part**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the

## BACKGROUND

Plaintiff initiated this action on September 3, 2013, alleging that then-John Doe Defendant, identified only by his Internet Protocol ("IP") address,  infringed on Plaintiff's copyrighted work by using the internet and a "BitTorrent" protocol to reproduce, distribute, display, or perform Plaintiff's protected films.   In an effort to identify the alleged infringer, Plaintiff requested permission from the Court to serve limited, immediate discovery on the Doe Defendant's Internet Service Provider ("ISP") prior to the Rule 26(f) conference.  (Docket #6.)  The Court determined that Plaintiff had shown good cause for limited expedited discovery and granted Plaintiff's motion in part. (Docket #10.)  In particular, the Court authorized Plaintiff to serve a third party subpoena pursuant to Fed. R. Civ. P. 45 on the identified ISP for the limited purpose of ascertaining the identity of the Doe Defendant as set forth in Plaintiff's Complaint. The Court directed that the subpoena be limited to providing Plaintiff with the true name, address, telephone number, and email address of the Defendant to whom the ISP had assigned an IP address.  With the subpoena, the Court directed Plaintiff to serve a copy of its order.  Finally, the Court emphasized that Plaintiff could only use the information disclosed in response to the subpoenas for the purpose of protecting and enforcing its rights as set forth in its Complaint [docket #1].  The Court cautioned Plaintiff that improper use of this information could result in sanctions.

In accordance with the Court's order, Plaintiff served a  Rule 45 subpoena on Defendant's ISP and obtained his identity.  Thereafter, Plaintiff filed an Amended Complaint on January 21,

---

failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

2014, naming Mr. Booth as a Defendant.  (Docket #27.)  Defendant filed his Answer to Plaintiff's Amended Complaint on February 24, 2014, asserting thirteen (13) affirmative defenses and a counterclaim for declaratory relief.  (Docket #35.)

On March 17, 2014, Plaintiff filed the present motions to strike Mr. Booth's defenses and to dismiss the counterclaim.  (Dockets ##40, 41.)  With permission from the Court, the Defendant filed a single response to the motions and Plaintiff filed a single reply brief in support of the motion. With its reply brief, Plaintiff raised issues not previously raised in the motion, including this Court's recommendation on a similar motion (involving the same counsel) issued after Defendant filed its response.  Accordingly, the Court permitted Defendant to file a surreply on or before May 6, 2014. Upon review of the motion and briefs, the Court is now fully advised and recommends as follows.

## MOTION TO STRIKE

Plaintiff's motion seeks to strike Defendant's first ("unclean hands"), second (copyright misuse), third (estoppel), fourth (implied license), tenth (knowledge, consent and acquiescence) and thirteenth (laches) affirmative defenses.  Plaintiff contends that the first and second defenses rely on a criminal statute having nothing to do with the Plaintiff enforcing its copyrights; that the third, fourth and tenth defenses are based on allegations having no factual support and, thus, are pure speculation; and that the thirteenth defense cannot succeed because the Plaintiff filed the present action well within the statute of limitations.

In countering Plaintiff's first argument, Defendant appears to assert unclean hands, copyright misuse and non-compliance with Section 2257 together in arguing that "[i]f any of the sexually explicit films featuring young-looking girls at issue here (*see* Counterclaim ¶¶ 8, 16) were feloniously produced in violation of the strict record-keeping requirements of 18 U.S.C. § 2257 *et*

3

*seq.* and its related regulations at 28 C.F.R. § 75 *et seq.* ("Section 2257"), then the Court should *not* enforce copyright monopolies for such films."  Response, docket #52 at 6-7 (emphasis in original). Defendant contends that Section 2257 should be a valid defense to copyright infringement.  He states, "[i]n the same way that the Court should not enforce a copyright for actual child pornography, the court should similarly decline to enforce copyrights for movies produced in violation of criminal rules that are narrowly tailored to help combat the same problem." *Id.* at 7.  As for the third, fourth and tenth defenses, Defendant alleges that Plaintiff's investigator has improperly "seeded" Plaintiff's copyrighted works into BitTorrent files to "entrap" unknowing infringers.  For the thirteenth defense, Defendant claims that Plaintiff has unduly delayed its pursuit of claims against Plaintiff since it has known since 2012 of infringements of its copyrights.

Plaintiff replies that the Copyright Act does not limit copyright protection only to those entities in compliance with federal record keeping statutes; Plaintiff's copyrights are entitled to protection despite their content; the Section 2257 defense has no relation to whether Defendant infringed Plaintiff's copyright; copyright misuse cannot be asserted since the Defendant has not alleged the challenged films are "child pornography"; the estoppel defense fails because Defendant cannot allege Plaintiff knew about any "honey pot" and induced Defendant to rely on the action; the implied license defense fails because Defendant denies having committed the infringement; the "knowing" defense fails because there are no allegations that Plaintiff assured Defendant, expressly or impliedly, that Defendant could use BitTorrent to copy the works; and the laches defense fails because Plaintiff filed the action within the statute of limitations.

In his surreply, Defendant argues that this Court was incorrect in ruling in a similar case that "Plaintiff fixes a facially valid notice under Section 2257 to every page of its website on which

sexually explicit conduct is depicted, and the only way to obtain material from the Plaintiff is by accessing a web page on which such notice appears."  Defendant attaches copies of pages from another website, which allegedly provides free access to Plaintiff's copyrighted works, on which compliant Section 2257 notices do not appear.  Defendant argues that discovery is necessary to determine whether Plaintiff actually complies with Section 2257, and argues that the Court need only determine whether Plaintiff violated the statute by a preponderance of the evidence.  Further, Defendant contends that there is no "firm authority" in this Circuit requiring that the Defendant be injured for an unclean hands defense, but even if so, Defendant is injured in the form of "special damage attorney's fees."  Finally, Defendant concedes that, if the affirmative defenses are stricken, then the counterclaim should be dismissed.

## I.    Legal Standards

Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case." *Kimpton Hotel & Rest. Group, LLC v. Monaco Inn, Inc.*, No. 07-cv-01514-WDM-BNB, 2008 WL 140488, at *1 (D. Colo. Jan. 11, 2008) (citing *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo. 1985)).  Striking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests.  5C Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1380 (3d ed. 2011).  Whether to strike an affirmative defense rests within the discretion of the trial court. *Anderson v. Van Pelt*, No. 09-cv-00704-CMA-KMT, 2010 WL 5071998, at *1 (D. Colo. Dec. 7, 2010) (citing *Vanderhurst v. Colo. Mountain Coll. Dist.*, 16 F. Supp. 2d 1297, 1303 (D. Colo. 1998)).

5

"An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance." *Unger v. US West, Inc.*, 889 F. Supp. 419, 422 (D. Colo. 1995). Some courts have expanded this pleading standard based on notice to reflect the plausibility standard applied to pleading a claim for relief, which is what Plaintiff asks this Court to do. The *Twombly/Iqbal* plausibility pleading standard has not been extended to affirmative defenses in this Circuit, and the Court declines to do so here. The standard articulated in *Unger* continues to be the appropriate standard. For the reasons stated herein, the Court holds that an affirmative defense is sufficient if stated "in short and plain terms" pursuant to Rule 8(b)(1)(A) and if the movant fails to demonstrate that the defense cannot succeed under any circumstance.

## II.   Analysis

Although six affirmative defenses are challenged here, the Court will address the Defendant's three arguments made in support of these defenses: (1) alleged violation of Section 2257; (2) Plaintiff has improperly seeded BitTorrent files; and (3) Plaintiff has unduly delayed its pursuit of claims.

### A.   Section 2257

Because the cases involve the same judges, parties, claims and counsel, the Court incorporates by reference here its recommendation in *Malibu Media v. Benson*, No. 13-cv-02394-WYD-MEH (D. Colo. Apr. 11, 2014). In *Benson*, the defendant argued alleged violations of Section 2257[2] in support of his fifth affirmative defense of "invalidity or unenforceability of copyright."

_____

[2]As relevant here, Section 2257 requires that producers of films depicting actual (as opposed to simulated) sexually explicit conduct "create and maintain individually identifiable records pertaining to every performer portrayed in such a visual depiction." 18 U.S.C. § 2257(a). Any person who qualifies as a producer must verify a performer's age, name, and any aliases, by examining his or her identification document(s) and record this information, as

This Court concluded that the defense should be stricken because (1) the defense of "illegality" is not properly invoked in a copyright action; (2) Benson asserted no factual basis for the alleged violations and the Court determined that Plaintiff's website pages contain 2257 notices; (3) the Court is wary of a defense for which the Court is asked to, and necessarily must, adjudicate in a civil case whether the opposing party engaged in violations of criminal statutes; and (4) Benson failed to allege he was injured by the alleged violations.

Here, Defendant argues that potential violations of Section 2257 support his affirmative defenses of "unclean hands" and "copyright misuse."  He expresses his disagreement with this Court's recommendation in *Benson* arguing the Court is incorrect that the Plaintiff's website, containing Section 2257 notices, affords the only access to Plaintiff's copyrighted works. Defendant attaches copies of pages from a website, "Pornhub.com," which apparently contains Plaintiff's copyrighted works but no Section 2257 notices.  Defendant also asserts that, while Plaintiff may comply with one section of the applicable regulation in fixing notices on its website pages, Plaintiff fails to comply with another section of the regulation.  Further, Defendant notes that, although Plaintiff knows its works are being distributed via BitTorrent, it still fails to fix notices to the movies themselves.

---

prescribed by regulations.  18 U.S.C. § 2257(b).  The records must be available for inspection at all reasonable times.  18 U.S.C. § 2257(c).  In addition, any producer must affix to every copy of the sexually explicit work a statement indicating where the required records are maintained.  18 U.S.C. § 2257(e).

Subsection (f) makes it "unlawful" for any person covered by the statute to: (1) fail to create or maintain the required records; (2) knowingly make any false entry or fail to make an appropriate entry; (3) knowingly fail to comply with the provisions of subsection (e); (4) sell any book, magazine, film, video or other matter "which does not have affixed thereto" a statement describing where the records required may be located; and (5) refuse any inspection request by the Attorney General or his or her designee.  18 U.S.C. § 2257(f).

The Court concludes that Defendant's arguments are unavailing. Even if Defendant's suppositions are true that Plaintiff is, and has been, violating Section 2257, Defendant has not alleged how any such violations relate to Plaintiff's claim of direct copyright infringement.

In copyright actions, the doctrine of unclean hands is applied only "where the wrongful acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'" *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). Where asserted, unclean hands "must be pled with the specific elements required to establish the defense." *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-cv-01644-REB-CBS, 2010 WL 3522409, at *3 (D. Colo. Aug. 11, 2010), *adopted by*, 2010 WL 3522408 (D. Colo. Sept. 2, 2010) (citing *MPC Containment Sys., Ltd. v. Moreland*, No. 05 C 6973, 2008 WL 1775501, at *5 (N.D. Ill. April 17, 2008)). These elements include a showing that the party seeking equitable relief is "(1) guilty of conduct involving fraud, deceit, unconscionability, or bad faith, (2) directly related to the matter at issue, (3) that injures the other party, and [4] affects the balance of equities between the litigants." *Id*. (citing *In re New Valley Corp.*, 181 F.3d 517, 523 (3d Cir. 1999)). Because the alleged inequitable conduct "must be connected ... to the matters before the court for resolution," a court should "not refuse relief to a party merely because it has engaged in misconduct which is unrelated to the claims before the court." *New Valley Corp.*, 181 F.3d at 525.

Although applied in a trademark infringement case, the Tenth Circuit has held that "a plaintiff's unclean hands will bar recovery for trademark infringement only if the inequitable conduct is related to the plaintiff's cause of action." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1255 (10th Cir. 2012) (internal quotations and citation omitted).

> [C]ourts have found such a relationship in two situations: First, there is such a relationship when the plaintiff has engaged in equitable conduct toward the public, such as 'deception or misuse of the trademark itself, resulting in harm to the public such that it would be wrong for a court of equity to reward the plaintiff's conduct by granting relief.' ... Second, the plaintiff's misconduct is sufficiently related to the cause of action 'when the plaintiff has acted inequitably toward the defendant in relation to the trademark.'

*Id.* (quoting *Worthington v. Anderson*, 386 F.3d 1314, 1320 (10th Cir. 2004)).  The Tenth Circuit applies these principles in a *trademark* infringement case; however, there is nothing distinguishing such application or preventing the principles from being applied in a *copyright* infringement case. The principles are not developed upon any statutory basis, and there are no citations to any specific statute or other law.  *See 1-800 Contacts, Inc.*, 722 F.3d at 1255; *see also Worthington*, 386 F.3d at 1320-21 (citing to both trademark and patent infringement cases).

Here, Defendant has not, and cannot, allege that Plaintiff has acted inequitably toward him in relation to the copyrights at issue by violating Section 2257; not only has Defendant denied that he downloaded and uploaded the protected works, Defendant has pointed to nothing in the Copyright Act prohibiting copyright protection to companies that have allegedly violated federal laws unrelated to the copyright.  Moreover, to the extent that Defendant attempts to argue Section 2257 violations harm the public, it is clear that Section 2257 violations are not "deception or misuse of the [copyright] itself."  *1-800 Contacts, Inc.*, 722 F.3d at 1255; *see also Mitchell Bros.*, 604 F.2d at 863 ("The doctrine of unclean hands does not purport to search out or deal with the general moral attributes or standing of a litigant.") (internal quotes and citation omitted).  In sum, the Defendant has failed to rebut Plaintiff's demonstration that the defense cannot succeed under the circumstances.  *See Worthington*, 386 F.3d at 1320 ("[unclean hands] does not extend to any misconduct, however gross, which is unconnected to the matter in litigation, and with which the opposite party has no

concern.") (citation omitted).

Likewise, the Plaintiff has demonstrated that Defendant's copyright misuse defense cannot succeed in this litigation.  "The copyright misuse doctrine is an equitable defense to a copyright infringement action that forbids the use of a copyright to secure an exclusive right or limited monopoly not granted by the copyright office and is contrary to public policy to grant."  *Home Design Servs., Inc. v. B&B Custom Homes, LLC*, No. 06-cv-00249-WYD-GJR, 2008 WL 2302662, at *2 (D. Colo. May 30, 2008) (citing 185 ALR Fed 123 and *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999)).  Defendant must prove that Plaintiff "illegally extended its monopoly beyond the scope of the copyright or violated the public policies underlying the copyright laws."  *Id.* (quoting *In re Indep. Serv. Orgs. Antitrust Litig.*, 85 F. Supp. 2d 1130, 1175 (D. Kan. 2000)).  Violations of Section 2257 have nothing to do with the "use" of a copyright and, while Defendant has raised public policy issues regarding violations of the criminal statute, Defendant fails to show how such policies underlie the copyright laws.

Accordingly, the Court finds Plaintiff has demonstrated Defendant's "unclean hands" and "copyright misuse" affirmative defenses cannot succeed under any circumstances in this case and recommends that the District Court grant Plaintiff's motion to strike the first and second defenses.

### B.      "Seeding" BitTorrent Files

Defendant's third ("estoppel"), fourth ("implied license") and tenth (knowledge, consent and acquiescence) defenses rely on his allegations that Plaintiff or its agents have "seeded" or planted copies of Plaintiff's copyrighted works onto BitTorrent for the purpose of inducing users to believe such content was being freely distributed in furtherance of marketing the works to the public.  Based upon this allegation, Defendant asserts that  (1) he would have been justified in relying on such

actions to conclude that the works were being made freely available and that downloading them would not subject Defendant to an infringement suit; and (2) a license for the royalty free download of the work should be implied.  Plaintiff contends that Defendant has not, and cannot, allege Plaintiff *knew* about any "seeding" by its investigator and induced Defendant to rely on such action to his detriment.  Further, Plaintiff argues the license defense fails because Defendant denies having committed the infringement.

A defendant must prove four elements to establish an estoppel defense in a copyright infringement case:

(1) the plaintiff must know the facts of the defendant's infringing conduct;

(2) the plaintiff must intend that its conduct shall be acted on or must so act that the defendant has a right to believe that it is so intended;

(3) the defendant must be ignorant of the true facts; and

(4) the defendant must rely on the plaintiff's conduct to its injury.

*Carson v. Dynegy*, 344 F.3d 446, 453 (5th Cir. 2003) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.07 (2002)).

The Court concludes that Plaintiff has failed to demonstrate the estoppel defense cannot succeed under any circumstance.  Taking Defendant's allegations as true, either the Plaintiff or its agents, including its investigator, seeded its copyrighted works onto BitTorrent for the purpose of marketing the works and inducing users to subscribe.  *See* Answer, Affirmative Defenses, ¶¶ 16, 30. Plaintiff asserts that Defendant "has not, and cannot, allege that Malibu knew of the alleged 'honey pot,'" referring to an alleged scheme by Plaintiff's investigator to seed its clients' content onto BitTorrent, operating a "honey pot."  *See id.*, ¶ 15.  However, Plaintiff does not address Plaintiff's "marketing strategy" theory, and the Court finds that, if Defendant's allegations were deemed true,

11

Defendant could succeed on its estoppel defense.

However, based on its narrow scope, the Court finds Defendant's implied license defense cannot succeed.  As a defense to copyright infringement, a defendant may assert an implied license "only in narrow circumstances where one party created a work at the other's request and handed it over, intending that [the other] copy and distribute it."  *Coach Inc. v. Kmart Corp.*, 756 F. Supp. 2d 421, 427 (S.D.N.Y. 2010) (quoting *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000)).  The District of Columbia Circuit has articulated the three-part test as follows: "an implied license will arise where (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work."  *Atkins v. Fischer*, 331 F.3d 988, 991-92 (D.C. Cir. 2003) (citations and internal quotations omitted).  Where the pleadings lack any factual support for the implied license defense, the defense is properly stricken.  *See Coach, Inc.*, 756 F. Supp. 2d at 427.

 Defendant's Answer forecloses the possibility of an implied license defense.  In response to the Amended Complaint, Defendant denies that he infringed Plaintiff's works. Answer, ¶¶ 16-22, docket #35.  On these facts, Defendant cannot demonstrate that he requested the creation of Plaintiff's works, that Plaintiff delivered the works, and that Plaintiff intended Defendant to distribute the work.

Moreover, Defendant neither explains, nor cites authority for, its "knowledge, consent and acquiescence" defense to Plaintiff's copyright infringement claim.  In fact, the only authority found by this Court for a defense similar to that of "knowledge" or "consent" is from the Copyright Act itself, which permits the defense of "fair use" of the copyrighted works.  Under the "fair use"

doctrine,

> the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of a copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include -

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

> (2) the nature of the copyrighted work;

> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Clean Flicks of Colo., LLC v. Soderbergh*, 433 F. Supp. 2d 1236, 1239 (D. Colo. 2006). "[T]he fair use doctrine must be applied using a case-by-case analysis, considering all four of the statutory factors, no one of which should be considered controlling." *Id.* (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)). Here, the Defendant alleges no facts supporting a "fair use" defense and, thus, the Court must conclude that the defense cannot succeed in this case.

Accordingly, the Court finds that Plaintiff has failed to demonstrate that Defendant's estoppel defense cannot succeed under any circumstance, but has demonstrated that Defendant's implied license defense, due to its narrow scope, and "knowledge and consent" defense cannot succeed. The Court recommends that the Court grant Plaintiff's motion to strike Defendant's fourth and tenth defenses, but deny the motion to strike Defendant's third defense.

C.    Undue Delay

Defendant relies on this argument for both his tenth and thirteenth defenses. For his

13

thirteenth defense, Defendant states, "Between the time plaintiff first became aware of a series of continuing infringements on BitTorrent for the copyrights in suit [since at least 2012] to the time plaintiff filed suit against defendant here, there was an unreasonable and inexcusable delay." Answer, Affirmative Defenses, ¶ 54, docket #35.  Plaintiff counters that laches may not be invoked as a defense in this case since the limitation period for bringing the copyright infringement claim has been set by the Copyright Act and met by the Plaintiff, and Defendant has not shown that this is a "rare case" for which laches may apply.  The Court agrees.

"Because laches is a judicially created equitable doctrine, whereas statutes of limitations are legislative enactments, it has been observed that '[i]n deference to the doctrine of the separation of powers, the [Supreme] Court has been circumspect in adopting principles of equity in the context of enforcing federal statutes.'"  *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1207-08 (10th Cir. 2001) (quoting *Cnty. of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 262 n. 12 (1985) (Stevens, J., dissenting in part)).  "Accordingly, '[w]hen a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period.'"  *Id.*; *see also* 6 Patry on Copyright § 20:55 ("The availability of laches for conduct occurring within the limitations period is impermissible.").  For purposes of this case, the Copyright Act provides that, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).

In rare cases, a statute of limitations may be "cut short" by the doctrine of laches. *Rodriguez-Aguirre*, 264 F.3d at 1208 (citing *Armstrong v. Maple Leaf Apartments, Ltd.*, 622 F.2d 466, 472 (10th Cir. 1979)).  "Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another ..." thus, "[i]n order to prove the affirmative defense of laches, the

defendant must demonstrate that there has been an unreasonable delay in asserting the claim *and* that the defendant was materially prejudiced by the delay." *Id.* (quoting *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997)) (emphasis in original). Here, the Defendant claims he is prejudiced by "Malibu's failure to timely enforce its copyrights [which] led directly to the copyrighted content's presence and availability for download on BitTorrent at the time of Defendant's alleged infringement." Response, docket #52 at 26.

First, the Court finds that a "laches" theory must be based on "an unreasonable delay in *asserting the claim*." *Rodriguez-Aguirre*, 264 F.3d at 1208 (emphasis added). Defendant's attempt to characterize as a "delay" the period from Plaintiff's initial investigation from 2012, until the time when Plaintiff found an alleged illegal download of one of its protected works (March 2013) (*see* Exh. A to Amended Complaint, docket #27-1) is improper, since no claim for infringement had arisen during that time. Certainly, Plaintiff cannot be held accountable for *not* raising such claim during that time. Defendant does not allege that the time from alleged download (March 2013) to the time Plaintiff identified the Defendant in the Amended Complaint (January 2014) supports a laches defense; even if he did, however, there are no allegations supporting a claim that such delay was "unreasonable" or "inexcusable."

Plaintiff also argues that the operative pleading alleges violations from March 8, 2013 through August 5, 2013 (docket #27-1), and that the statute of limitations for its copyright action is three years; thus, Plaintiff asserts that Defendant's laches defense cannot succeed under any circumstance. The Court must agree. Again, the Copyright Act provides that an action must be filed "within three years after the claim accrued." 17 U.S.C. § 507(b). Here, Defendant asserts neither facts nor allegations that would support a finding that Plaintiff filed its January 21, 2014 Amended

Complaint outside of the three-year statute of limitations.  On its face, the thirteenth defense cannot succeed under any circumstance.

Moreover, material prejudice is not shown by conclusory allegations or mere speculation. *Rodriguez-Aguirre*, 264 F.3d at 1208-09 (rejecting an allegation that "[m]emories fade, forfeited property has been disposed of and retrieval of records will be unnecessarily difficult and potentially impossible in some instances if records have been destroyed.").  In this case, Defendant essentially states that he was prejudiced simply because, although Plaintiff knew its works were being infringed, Plaintiff "allowed" its copyrighted works to be available on BitTorrent during the period at issue here.  However, Plaintiff had no duty to notify Defendant of any infringing conduct, much less that which may have infringed Plaintiff's works.  *See Home Design Servs., Inc. v. Trumble*, No. 09-cv-00964-WYD, 2011 WL 843900, at *3 (D. Colo. Mar. 8, 2011) (granting summary judgment on the affirmative defense of failure to mitigate in a copyright case stating, "[e]ven if [Plaintiff] was aware of possible infringements of its copyrights in the same geographic area as the [Defendants], [Plaintiff] had no duty to preemptively warn individuals like the [Defendants] not to violate copyright law.").

Likewise, the Court concludes Defendant's tenth defense cannot succeed.  As set forth in the previous section, the tenth defense asserts "acquiescence" in addition to knowledge and consent. The Second Circuit has noted the close relationship between "acquiescence" and "laches."  To succeed on a defense of "acquiescence," a defendant must prove: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice.  *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*,

314 F.3d 62, 67 (2d Cir. 2002).  As set forth above, the Defendant has failed to allege facts that Plaintiff "actively represented" it would not assert any claims between 2012 and March 2013 and that any delay was inexcusable.  Consequently, the Court must conclude that Defendant's acquiescence defense cannot succeed in this litigation.

Therefore, the Court finds Defendant's laches and acquiescence defenses cannot succeed under any circumstances and recommends that the District Court grant Plaintiff's motion to strike Defendant's tenth and thirteenth affirmative defenses.

**III.    Conclusion**

As described above, the Court finds that Defendant's First, Second, Fourth, Tenth and Thirteenth Defenses cannot succeed under any circumstance and should be stricken. On the other hand, Plaintiff has failed to demonstrate that Defendant's Third Defense should be stricken. Accordingly, the Court respectfully recommends that Plaintiff's Motion to Strike Defendant's Affirmative Defenses [filed March 17, 2014; docket #40] be **granted in part and denied in part** as set forth herein.

**<u>MOTION TO DISMISS</u>**

Plaintiff seeks an order dismissing Defendant's counterclaim for a declaration that "Defendant is not liable to Malibu for infringement."  Plaintiff contends that "[c]ounterclaims that are merely answers or defenses are not independent pieces of litigation and should be dismissed." Further, Plaintiff asserts Defendant's reliance on 18 U.S.C. § 2257 is irrelevant since the record keeping statute provides no private cause of action and, therefore, has no bearing on Defendant's affirmative defenses.   Finally, Plaintiff contends the Defendant's allegation that Plaintiff's investigator has "seeded" Plaintiff's works on BitTorrent is merely false speculation.

Defendant argues that its "affirmative defenses, as alleged, are the functional, copyright equivalent to a counterclaim for declaratory relief to invalidate a patent at issue in an infringement suit," and asks the Court to accept them as stated or, in the alternative, accept the factual allegations in the counterclaim as part of the defenses and order Plaintiff to respond to such allegations in a reply to the answer. *Id.* at 10-11.

## I.    Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while

18

the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim.  *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief."  *Id.* (quotation marks and citation omitted).

## II.    Analysis

"The Declaratory Judgment Act states in pertinent part that, '[i]n a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"  *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008) (citing 28 U.S.C. § 2201(a)).  "[A] declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement."  *Id.* (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)).  That is, "a declaratory judgment suit must be

'definite and concrete, touching the legal relations of parties having adverse legal interests," and must be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* at 1244 (quoting *MedImmune v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). "Put differently, 'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.*

In its motion, Plaintiff contends that Defendant's counterclaim is duplicative of his affirmative defenses and, thus, is redundant and unnecessary. For issues that are the same as, or similar to, those raised in the present motion, courts in other jurisdictions have concluded essentially that a counterclaim is neither duplicative nor redundant if it asserts an independent case or controversy that survives dismissal of a plaintiff's claim. *See Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 467 (S.D.N.Y. 2010); *see also Arista Records LLC v. USENET.COM*, No. 07 civ.8822(HB), 2008 WL 4974823, at *5 (S.D.N.Y. Nov. 24, 2008); *Interscope Records v. Kimmel*, No. 3:07-cv-0108, 2007 WL 1756383, at *3-*4 (N.D.N.Y. June 18, 2007). Other courts have come to the same conclusion without necessarily analyzing the "case-or-controversy" requirement. *See Malibu Media, LLC v. Doe 1*, No. DKC 12-1198, 2012 WL 6681990, at *3 (D. Md. Dec. 21, 2012) (because there was no substantive distinction between the defenses and counterclaims, counterclaims were dismissed); *see also Interscope Records v. Duty*, No. 05CV3744-PHX-FJM, 2006 WL 988086, at *3 (D. Ariz. Apr. 14, 2006) (where counterclaim for declaratory judgment simply alleged that defendant did not commit copyright infringement, the counterclaim was redundant and unnecessary); *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005) (where counterclaim is essentially

identical to the complaint except that it seeks the opposite effect, the counterclaim is unnecessary and improper).

Upon review of the counterclaim, Defendant seeks only the following relief:

A.    Dismiss Malibu's underlying complaint with prejudice;

B.    Declare that Defendant is not liable to Malibu for infringement and that Malibu takes nothing;

C.    Find that some of the Section 2257 records for the movies at issue in the underlying complaint are incomplete, deficient or fake. Defendant also seeks a holding that this finding is sufficient to sustain an affirmative defense to infringement for Defendant of copyright misuse, estoppel and/or unclean hands;

D.    Find that Malibu and/or its agent IPP are responsible for seeding some of Malibu's content onto BitTorrent. Defendant also seeks a holding that this finding is sufficient to sustain an affirmative defense to infringement for Defendant of copyright misuse, estoppel and/or unclean hands;

E.    Award Defendant his costs and attorneys fees to the extent allowed by law;

F.    Award Defendant such other relief as is just and equitable.

Counterclaim, docket #35 at 27-28. Defendant concedes that, to the extent his affirmative defenses of "unclean hands," "copyright misuse," "estoppel," and "implied license" are stricken, the counterclaim should be dismissed.  Here, the Court has recommended that all but the estoppel defense be stricken; accordingly, the Court will focus on whether the counterclaim should survive with the estoppel defense.

Defendant contends that its estoppel defense could be tried as a separate action, even if Plaintiff were to dismiss its claim against Defendant.  The Court is not persuaded.  Defendant's request for declaratory relief, as stated, does not constitute an independent case or controversy because it does not allege an injury, other than an assertion that the relief is necessary to support a

defense to the present action.  *See* Counterclaim,¶¶ 28-29; *see also* Prayer for Relief, ¶ D. Defendant's speculation that a declaration here may "foreclos[e] the possibility of future suits by Malibu" is not concrete (*id.*, ¶ 30), and Defendant does not articulate how or whether he has standing to seek relief on behalf of defendants in other cases.

"'When [a counterclaim] for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim,' courts often exercise their discretion to dismiss the counterclaim 'on the ground that it is redundant and a decision on the merits of plaintiff's claim will render the request for a declaratory judgment moot.'" *PNC Bank, N.A. v. El Tovar, Inc.*, No. 4:13-cv-1073 CAS, 2014 WL 538810, at *13 (E.D. Mo. Feb. 11, 2014) (quoting 6 Charles A. Wright, et al., <u>Federal Practice and Procedure</u> § 1406 (3d ed. 1998). "When deciding whether to dismiss a counterclaim as redundant, courts consider whether the declaratory judgment serves a useful purpose." *Id.* (quoting *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, 871 F. Supp. 2d 843, 862 (D. Minn. 2012)). "Such an analysis requires consideration of whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim." *Id.*

Here, the Defendant has failed to rebut Plaintiff's arguments that the counterclaim is redundant and does not state an independent case or controversy.  If a fact-finder in this case were to determine that Plaintiff is estopped from seeking damages for infringement because Defendant produces evidence that Plaintiff seeded its copyrighted works for marketing purposes, the claim and defenses are resolved and the counterclaim would be moot.

Accordingly, the Court finds that Defendant fails to state a plausible counterclaim for declaratory relief and recommends that the District Court grant Plaintiff's motion to dismiss

Defendant's counterclaim.

## III.   Conclusion

As described above, the counterclaim at issue here fails to assert an independent case or controversy that would survive dismissal of the Plaintiff's claim.  Therefore, the Court concludes that Defendant's counterclaim, as stated, is duplicative of his defenses asserted in the Answer and, thus, redundant and unnecessary.  Accordingly, this Court respectfully recommends that the District Court **grant** Plaintiff's Motion to Dismiss Defendant's Counterclaim for Declaratory Relief [filed March 17, 2014; docket #41].

Entered and dated at Denver, Colorado, this 9th day of May, 2014.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge